UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*,<br>JOHN W. FREEMAN<br>2215 Sudley Church Ct.<br>Fairfax Station, VA<br><br>               Plaintiff,<br><br>BRINGING THIS ACTION ON BEHALF<br>OF THE UNITED STATES OF AMERICA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

FILED **UNDER SEAL**
PURSUANT TO
31 U.S.C. §3730(b)(2)

UNITED STATES ATTORNEY
Judiciary Center Building,
555 Fourth Street, NW,
Washington, 20530 c/o John Greene

and

ATTORNEY GENERAL OF
THE UNITED STATES
U.S. Department of Justice
10th and Constitution Avenues, N.W.
Washington, DC 20530

vs.

SET CORPORATION, INC.
3811 N. Fairfax Drive; Suite 350
Arlington, VA

and

TOM BURNS
1448 Cola Drive
McLean, VA

and

BRUCE DEAL
13155 Compton Road
Clifton, VA

and

CASE NUMBER 1:06cv01106

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: General Civil

DATE STAMP: 06/16/2006

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**JURY TRIAL
DEMANDED**

ROBERT DOUGLAS                        )
12001 Westwood Hills Drive            )
Oak Hill, VA                          )
                                      )
                                      )
                    Defendants.       )
_____ )

This is a *qui tam* action under 31 U.S.C. Sec. 3729, *et seq.* of the False Claims Act filed by Relator/Plaintiff John W. Freeman, in the name of the United States Government and himself, to recover penalties and damages arising from Defendants' violations of federal requirements concerning contracts with agencies of the United States, specifically the Department Defense Advanced Research Projects Agency.

## JURISDICTION AND VENUE

1.    Plaintiff, John W. Freeman, hereby alleges causes of action under 31 U.S.C. sections 3729 *et. seq.* of the False Claims Act, arising from Defendants' contracts with agencies of the United States Government, specifically the Defense Advanced Research Projects Agency, which is a component of the U.S. Department of Defense.

2.    Plaintiff, John W. Freeman is the original source of all the allegations contained in this Complaint.

3.    There has been no public disclosure of the allegations contained in this complaint.

4.    Pursuant to the requirements of the False Claims Act 31 U.S.C. § 3729, *et. seq.*, the plaintiff has provided the government with a confidential disclosure statement and exhibits to substantiate his allegations.

5.    Jurisdiction over all stated causes of action is conferred upon this Court by 31 U.S.C. § 3732 and 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

6.    The Defendants are in the business of providing services and material to the U.S. Government through its Defense Agencies and conduct business in Washington, DC.

7.    Defendant, SET Corporation, Inc. (Hereinafter, "SET"), maintains offices in several locations in the United States including 3811 N. Fairfax Drive, and conducts business with Agencies of the U.S. Government as well as other government contractors in Washington, DC.

8.    Defendant, Tom Burns of 1448 Cola Drive, McLean, VA 22101 is President of SET, a founder, and an owner of the company.

9.    Defendant, Bruce Deal of 13155 Compton Road, Clifton, VA 22124 is Executive Vice-President of SET, a founder, and an owner of the company

10.   Defendant, Robert Douglas of 12001 Westwood Hills Drive, Oak Hill, VA 20171 is Chief Technology Officer of SET, a founder, and an owner of the company.

11.   Defendants, Burns, Deal and Douglas own at least a controlling interest in SET Corporation, Inc.

12.   Venue and jurisdiction are proper in the United States District Court, Washington, D.C. pursuant to 28 U.S.C. Section 1391(c) and 31 U.S.C. Section 3732 as the Defendants are a group of organizations and persons subject to personal jurisdiction in Washington, DC.

### THE PARTIES INVOLVED

13.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above

14.   Plaintiff, John W. Freeman of 6215 Sudley Church Ct. Fairfax Station, VA is a financial manager with more than 20 years of experience.  He has served as a Chief Financial Officer of several high tech and defense related companies, including SET from June

through December of 2005. Mr. Freeman is the original source of all the allegations presented herein and they have not been publicly disclosed.

15. Defendant, SET of Fairfax, Virginia was Mr. Freeman's employer. The company is in the business of providing services to the Department of Defense, generally through the Defense Advanced Research Projects Agency, "DARPA."

16. SET provided services to the government, both as a prime contractor and through sub-contracts held by CACI International, Inc. and Schafer Corporation. (See below) Headquartered in Arlington, VA, SET also has offices in Merrifield, VA, Greenbelt, MD, and Dayton, OH.

17. SET is a privately owned business, founded by three scientists, see below, who gained their experience working in DARPA.

18. Defendant, Tom Burns of 1448 Cola Drive, McLean, VA 22101is President of SET, a founder, and owner of the company

19. Defendant, Bruce Deal of 13155 Compton Road, Clifton, VA 22124 is Executive Vice-President of SET, a founder, and an owner of the company.

20. Defendant, Robert Douglas of 12001 Westwood Hills Drive, Oak Hill, VA 20171 is Chief Technology Officer of SET, a founder, and an owner of the company.

21. Defendants, Burns, Deal and Douglas own at least a controlling interest in SET.

## FACTS

22. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

23. Plaintiff, John W. Freeman was hired in June of 2005 by SET to provide financial direction and leadership for the firm.

24.    As Chief Financial Officer ("CFO"), he reorganized, improved and ran the financial aspects of the company.

25.    June, 15, 2005 was Mr. Freeman's first day of work.

26.    On that day, Tom Burns, SET's President stated there was a problem that he did not know how to solve, because Bruce Deal no longer had security clearance to work on the government contracts.

27.    Mr. Burns said the problem arose because of complications in Mr. Deal's taxes and subsequent lie detector tests related to the security clearance.

28.    At the time, Mr. Freeman was focused on his job to overhaul the company's finances.

29.    However, Mr. Deal's security clearance problem became more difficult.  Mr. Freeman noticed some $6,000 in expenses paid to Mr. Deal by SET for legal fees to attempt to re-instate the security clearance.

30.    Mr. Deal was not successful in having his security clearances re-instated.

31.    In the late fall, Mr. Burns, as well as other company officials, stated to Mr. Freeman that it was unlikely that Mr. Deal would get his clearances back.

32.    The work SET does for DARPA is classified.

33.    The nature of the work is such that upon hiring the Relator, the company required Mr. Freeman to obtain security clearances.

34.    Mr. Freeman's work was restricted to financial matters.  Mr. Freeman did no work on the scientific or classified material for the firm. However, he did obtain clearances.

35.    By contrast, as Executive Vice President, Mr. Deal not only directly worked on secret and classified material, he supervised the work of other SET employees who were also working on such material.

36.  As a result, Mr. Freeman suggested Mr. Deal be taken off day to day management of classified contracts.

37.  Mr. Freeman made this suggestion during weekly management meetings, which were held on Friday at 9:00 AM starting in October.

38.  Mr. Freeman made at least three such recommendations during these meetings.

39.  Mr. Burns, Deal and Douglas all attend these regular management meetings.

40.  Mr. Freeman had similar discussions with the controller of SET, Mr. David Samons.

41.  In December, the Plaintiff also suggested that there was a strong candidate to handle the work in house.

42.  Mr. Freeman believed and said that Mike Thompson, a career military professional, with appropriate training, would be able to assume Mr. Deal's duties.

43.  Mr. Deal is directly in charge of running SET's engineering services business.  This accounted for approximately six million dollars, ($ 6.0M) in 2005 to SET.

44.  Mr. Deal also is involved with the overall management of the firm, which billed approximately ten million dollars on government contracts in 2005 ($10.0M)

45.  SET obtained this revenue as a prime contractor to DARPA and as a sub-contractor.

46.  In addition to its work as a prime contractor, SET was hired as a sub-contractor by Schafer Corporation, and CACI International, Inc. ("CACI International") also to perform work which was ultimately for DARPA.

47.  CACI International served as a prime contractor to DARPA and hired SET as a sub-contractor.  CACI International has offices throughout the United States including those at 1100 L Street, Washington, DC.

48.  Schaefer Corporation, served as a prime contractor to DARPA and hired SET as a sub-contractor. Schafer Corporation has offices throughout the United States including those at 3811 North Fairfax Drive Arlington, Virginia.

49.  Virtually all the work conducted by SET required security clearances.

50.  Any such contracts requiring classified security clearances that Mr. Deal worked on were materially compromised by Mr. Deal and by SET's knowing, willful and reckless actions to allow his continued access to such information.

51.  Mr. Deal's work not only materially compromised SET's prime contracts and SET's sub contracts, but also, compromised the Schafer Corporation and CACI International, prime contracts with DARPA.

52.  SET knowingly, willfully and recklessly caused Schafer Corporation and CACI International to provide services to DARPA, while using personnel who did not have security clearances, because Mr. Deal continued in his position with SET.

53.  Further investigation will reveal the extent of the damages to the United States as a result of SET's actions which compromised the security of the CACI International and Schafer Corporation prime Contracts.

54.  Other than funding Mr. Deal's unsuccessful efforts to re-instate security clearances, SET took no action on this issue.

55.  The company did not obtain legal advice, nor did it limit Mr. Deal's participation in any way during Mr. Freeman's tenure at the company.

56.  Mr. Freeman also raised objections to the overtime charges submitted by the owners and managers of SET.

57.  Mr. Burns, the President of the company and Mr. Deal routinely charged government contracts for overtime work.

58.  Their direct work on contracts could not possibly have exceeded 40 hours on a regular basis, as they had significant administrative duties to perform in order to run the firm.

59.  Mr. Deal not only worked on classified material without proper clearance, he also expensed to the company and ultimately the government, legal expenses related to the unsuccessful effort to get those clearances returned.

60.  Mr. Freeman objected to making such a charge as a General and Administrative Expense against the Government, but was over ruled at the time.

61.  Mr. Freeman maintains a good faith belief that this charge was ultimately passed on to the Government.

62.  Mr. Freeman was successful in improving the financial operations of SET. He was able to secure a one million dollar credit line for the firm, negotiate a 70% reduction in health care fees and complete the 2004 audit among other significant accomplishments.

63.  The founders of the company had not focused on financial management and Mr. Freeman was able to vastly improve these systems.

64.  Indeed, Mr. Freeman was so successful that SET rewarded him with a significant bonus on December 10, 2005, just prior to a Christmas vacation.

65.  Mr. Freeman had also made repeated objections to the overtime charges presented by the firm and especially the lack of security clearance held by Mr. Deal by this time.

66.  Mr. Freeman returned to work on December 27, 2005, and he was summarily fired upon his return to work.

67. The Plaintiff was not allowed to keep any working material or documents from his time at SET.

68. Mr. Freeman's laptop computer was also confiscated and he was not allowed to leave SET's offices with any records

## COUNT I

69. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

70. The defendants knowingly, willfully and recklessly worked for DARPA under contracts for which SET was the prime contractor, which required security clearances while their Executive Vice President had lost his security clearance.

71. The Defendants did not ensure that DARPA's security maintained, but instead continued to bill the Government for work on classified and secret projects on which their Executive Vice President supervised, directly worked, observed or otherwise participated.

72. Each of the above-named Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for work that they claimed was done in accordance with the Government's security procedures and requirements, when in fact they knowingly failed to maintain the proper security clearances.

73. As a result of Defendants' actions, the United States has paid directly or indirectly tens of thousands of false claims and spent hundreds of millions of dollars pursuant to Government contracts unnecessarily and as a result of Defendants' fraudulent and/or illegal conduct. Damages to the Government include, but are not limited to, the full value

of the contracts Mr. Deal supervised and had access to which required such security clearances.

## COUNT II

74.  The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

75.  Each of the above-named Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by the defendants knowingly, willfully and recklessly working for DARPA under contracts for which SET was a sub-contractor, which required security clearances, while their Executive Vice President lost his security clearance. The Defendants did not ensure that DARPA's security maintained, but instead continued to bill for work on classified and secret projects on which their Executive Vice President supervised, directly worked, observed or otherwise participated.

76.  As a result of Defendants' actions, the United States has paid directly or indirectly tens of thousands of false claims and spent hundreds of millions of dollars pursuant to Government contracts unnecessarily and as a result of Defendants' fraudulent and/or illegal conduct. Damages to the Government include, but are not limited to, the full value of the sub-contracts Mr. Deal supervised and had access to which required such security clearances.

## COUNT III

77.  The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

78.  Each of the above-named Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by the defendants knowingly, willfully and recklessly

working for DARPA under contracts for which SET was a sub-contractor, which required security clearances, while their Executive Vice President lost his security clearance.

79.    CACI International and Schafer Corporation were prime contractors who hired SET to work on DARPA projects as a sub-contractor.

80.    The Defendants did not ensure that DARPA's security maintained, but instead continued to bill for work on classified and secret projects on which their Executive Vice President supervised, directly worked, observed or otherwise participated.

81.    As a result of Defendants' actions, the United States has paid directly or indirectly false claims pursuant to Government contracts unnecessarily and as a result of Defendants' fraudulent and/or illegal conduct. Further investigation will reveal the extent of damages to the Government as a result of the damages caused to the prime contracts held by CACI International and Schafer Corporation by the defendants' work on the sub-contracts.

## COUNT IV

82.    Each of the above-named Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by the defendants' knowingly, willfully and recklessly charging DARPA for overtime, while not working directly on such contracts.

83.    Executives of SET routinely billed DARPA for overtime directly.

84.    Mr. Deal and Mr. Burns in particular regularly billed contracts directly for such charges.

85.    Both Mr. Burns, President of SET and Mr. Deal, Executive Vice President of SET had significant administrative obligations to SET in addition to work on DARPA contracts.

86.    As executives of the company their administrative duties for SET should not have been billable to the Government as direct costs of contracts.

87.    Damages to the United States include, but are not limited to, the full amount of overtime charges for which SET executives were not performing direct work on Government contracts or sub-contracts.

88.    Each such instance of a fraudulent charge would also be subject to a fine of as much as $10,000 under the Act.

## COUNT V

89.    The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

90.    The defendants violated the False Claims Act, 31 U.S.C. § 3730(h), by retaliating against Mr. Freeman for objecting to the Defendants' practices detailed above and/or for engaging in other activity protected by 31 U.S.C. § 3730(h).

91.    The company ultimately fired Mr. Freeman in violation of this provision of the Act.

92.    Damages to Mr. Freeman include, but are not limited to, back pay, interest on the back pay, loss of reputation and attorneys' fees.


WHEREFORE, plaintiff demands judgment for all of the following:

a)    That this Court enter a judgment against defendants in an amount equal to three times the amount of damages the United States Government has sustained because of defendants' continued work on SET's prime contracts with DARPA while a key executive lost security clearances.

b)    That this Court enter a judgment against defendants in an amount equal to three times the amount of damages the United States Government has sustained because of defendants'

continued work on SET's sub-contracts for work for DARPA while a key executive lost security clearances.

c) That this Court enter a judgment against defendants in an amount equal to three times the amount of damages the United States Government has sustained because of defendants' continued work on sub-contracts which caused damages in an amount to be determined by investigation and trial to the prime contracts held by held through Schaefer Corporation and CACI International, Inc. while a key SET executive lost security clearances.

d) That this Court enter a judgment against defendants in an amount equal to three times the amount of damages the United States Government has sustained because of defendants' charging for overtime hours that they did not work directly on government contracts or sub-contracts.

e) That this Court enter a judgment against the defendants in an amount equal to three times the amount awarded to the defendants under contracts performed as a prime or sub-contractor to DARPA and on overtime charged to such contracts which was not for direct work on those contracts, plus a civil penalty of $5,000 to $10,000 for each violation of 31 U.S.C. section 3729 or the Federal Acquisition Regulations ("FARs") or any other applicable regulations.

f) That Relator/Plaintiff be awarded punitive damages in an amount to be determined by jury, which shall dissuade the defendant and others from similar action;

g) That Relator/Plaintiff be awarded all reasonable attorneys fees and costs, pursuant to 31 U.S.C. § 3730 subsection (d) (1) (b) and subsection (d) (2) and (h).

h) That in the event the United States Government continues to proceed with this action, the Relator/Plaintiff be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of any award or the settlement of the claims;

i) That in the event that the United States Government does not proceed with this action, the Relator/Plaintiff be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of any award or settlement;

j) That the Relator/Plaintiff be awarded reinstatement with the same seniority status he would have had, but for the discrimination, two (2) times the amount of back pay, interest on the back pay, and compensation for special damages sustained as a result of the discrimination pursuant to 31 U.S.C. § 3730 (h).

k) That the Relator/Plaintiff be awarded pre-judgment and post judgment interest;

l) That a trial by jury be held on all issues;

m) That the United States Government and the Relator/Plaintiff receive all relief both at law and at equity, to which they may reasonably appear to be entitled.

### JURY TRIAL DEMANDED

Respectfully submitted,

_____
Stephen M. Kohn
DC Bar No. 411513

_____
Michael D. Kohn
DC Bar No. 425617

David K. Colapinto
DC Bar No. 416390

KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, DC 20007-2756
Phone: (202) 342-6980
Fax:    (202) 342-6984

*Attorneys for John W. Freeman*

June7, 2006